Corwin, J.
The only question presented for our consideration is-whether, under the circumstances set up in the replication, the plaintiff, by her next friend, and without the joinder of her hus *348 band, can maintain an action at law with respect to property decreed to her separate use and enjoyment?
It is remarkable that upon a question bo frequently arising, and •of so general interest and importance, involving, as it does, a consideration of the relative rights and liabilities of the parties to this, one of the principal private relations, the common law rule, in case of a separation de facto, has at different times been so differently •understood and declared by the courts of England. In 1786, Lord Mansfield, in pronouncing the unanimous opinion of the court of King’s Bench, held that a married woman, living separate and apart from her husband, under a settlement by which a competent maintenance was secured to her, was liable, as a feme sole, for debts incurred by her. And, in numerous adjudged cases, collected in 1 Salk., tit. Baron and Femme, it was held that a married woman was liable as a feme sole, -when she lived separate and apart from her husband, and had a competent separate maintenance, regularly paid, and when the goods were furnished for her separate use and support.
In *Todd v. Stokes, Lord Chief Justice Holt observed: “If Baron and Femme separated by consent, and she has a separate allowance, it is unreasonable that she should have it still in her power to charge him.” But for a series of years thereafter, the rule thus established, by so high authority, was gradually encroached upon by the court of King’s Bench, under the administration of Lord Kenyon, until, in the case of Marshall v. Bretton, 8 Term, 545, it was decided that a plea in abatement of coverture at the time when the debt accrued, was a sufficient answer to the action. And it is now well settled in England, that while the marriage subsists in law, a separation de facto, however solemnly made and strictly •enforced by contract between the parties, although an adequate fund is secured for her maintenance and support, the parties remaining in the realm, the wife can neither sue in her own name, nor be sued, for debts owing to or incurred by her; but that in all such cases a remedy must be had by resort to the powers of the court of chancery over trust funds. In Lewis v. Lee, 3 Barn. & Cres. 291, it was decided that coverture was a good plea, notwithstanding a divorce a mensa et thoro. But, although it thus appears to be the policy of the English courts, at this time, that rights and liabilities of this description should be specially cognizable in courts of equity, yet the more liberal and reasonable rule of Lord *349 Mansfield and Chief Justice Holt seems to have obtained in this-country. A learned American commentator says: “ I should apprehend that the wife could sue and be sued without her husband, when the separation between the husband and wife was by the act of. the law, and that takes place not only in the case of a divorce a mensa et thoro, but also in the case of imprisonment of the husband as a punishment for crimes. Such a separation may, in this respect, be equivalent to transportation for a limited time, and the sentence which suspended the marital power suspends the disability of the wife to act for herself, because she can not have the authority of her husband, and is necessarily deprived of his protection.” 2 Kent’s Com. 136. And this doctrine is adopted in Dean v. Richmond, 5 Pick. 461; Pierce v. Burnham, 4 Metc. *303, and in Lefevre’s Lessee v. Murdock, Wright, 205. In Gregory v. Paul, 15 Mass. 31, it was held, that although the marriage relation still subsisted, “ when the husband had deserted the wife in a foreign country, and she had thereafter maintained herself as a single woman and for five years had lived in that commonwealth, the husband being a foreigner, and never having been within the United States, she was competent to sue and be sued as a feme ■ sole; and her release would be a valid discharge for any judgment she might recover.”
In Abbott v. Bayley, 6 Pick. 89, the husband, by his cruelty, had driven his wife from his house, without providing her any means • of support. ■ The wife went to Massachusetts, and for twenty years maintained herself as a single woman, the husband having remained a citizen of, and resident in, another of the United States, and having married another woman, it was held that she was entitled to sue as a feme sole. And it is established by well adjudicated cases in the courts of different states of this Union, that not only where the marriage relation is suspended by act of law, but. where the husband is a foreigner, residing permanently abroad, or where by his cruelty a separation is forced, and the wife removes to another one of the United States and maintains herself as a single woman; in either of these cases, whether the wife have, or have ' not, a separate allowance, she is entitled to sue and be sued as a feme sole. And this right extends to whatever contract she may make, and to whatever property or interest she may have.
But in the case under consideration there has been no suspension-of the marriage relation by act of law—there is no residence - *350 ¡abroad—the parties continue to reside in the State of Ohio. The wife has been compelled, by the gross abuse of her husband, to ¡separate herself from him—she has not chosen to seek a divorce jx vinculo matrimonii—a divorce a mensa is not now provided by the laws of Ohio. By a decree of one of the courts of this state, a specific property is assigned to her as alimony—she is possessed of the property, and continues to live and maintain herself as a single *woman. May she not sue those who trespass upon her lands, or the tenant who withholds her rents, or for the proceeds of her alimony ? If she must join her husband in an action, he may release it; he may receive her rents, and discharge her tenants, and thus effectually defeat the means of support provided by the decree of alimony. It is replied, that she may have relief in a •court of equity ; and it is true that she may there obtain a remedy} not only in the exercise of common chancery powers, but by express legislative enactment of our state. But we are not disposed to drive her out of a court of law, and oblige her to seek relief in .another action, and in another forum, unless some valid objection •exists to her recovery at law. The tendency of our legislation, for the last quarter of a century, has been to enlarge and extend the rules by which the legal rights of married women shall be determined and protected; and being satisfied that this legislation is demanded by the well-being of society, that it is founded in a humane, liberal, and enlightened policy, we are unwilling to adopt .any unmeaning and unreasonable distinction, which will defeát its full operation in its true intent and spirit. And especially at this period’of our history, when the days of distinction between law and -equity are almost numbered, are we unwilling, in the absence of any good reason requiring us to do so, to compel the party to seek -elsewhere, with increased expense, delay and vexation, an admitted right, given to her by the laws of the land.
All of the cases, ancient and modern, where the right of the wife to sue and be sued alone is denied, go upon the ground that the right of the husband to the custody of the person of the wife, and the right of the wife to the protection of her husband, still continue. But it is settled by respectable decisions in this country, that where there is a separation de facto, and the husband has not the actual ■custody and control of, and does not extend protection over the wife, „and a separate allowance has been decreed to her, although tho «marriage relation still nominally subsists, the husband is not liable *351 •■upon her contracts. Burnett v. O’Fallon, 2 Miss. 69. She may maintain an action at law to secure and protect *the allowance thus decreed to her. Prather v. Clarke, 1 S. C. Const. 453.
What is the true rule in Ohio ? If this party can not sue at law to recover rents accruing upon the lands assigned her as alimony, neither can she sue at law to recover for a trespass upon such lands; ■or if the proceeds of such alimony are carefully saved, and invested in articles of personal property, for the more convenient and profitable enjoyment of the lands, and a trespass is committed upon such personalty, a court of law is impotent for relief, and the wrong is without a remedy j or the trespass, properly cognizable at law in -all other cases, must be prosceuted in equity. But we think it a much greater innovation upon established rules to say that recov■ery shall be had in equity for trespasses, than to say that when a married woman, by the brutality of her husband, has, in fact, been ■deprived of his care and protection, and compelled to live and maintain herself as a single woman ; and when the husband hasj in fact, forfeited all claim upon the society of his wife, she may maintain an action to protect what is decreed to her in a proceeding for alimony, as her own separate property. In this case, the husband has forfeited all claim to the custody of the wife, and all right to her separate property ; for it will be observed that under the act of March 6, 1840, a petition for alimony alone may be filed only for causes which would justify a petition for divorce; and the pleadings show that alimony was decreed to this plaintiff for one of the causes of divorce enumerated in the statute. The policy of the last named act is not to compel a wife, who may suffer from any one of the causes of divorce, to seek a divorce a vinculo; but con-templating a case of actual separation, when the wife is, to all intents and purposes, deprived of the care and protection of her husband ; when she is obliged to live separate and apart from him, and maintain herself as a single woman, provides expressly for her alimony, in her separate and single condition. The several acts of February 28, 44 Ohio L. 75, and of February 5, 1847; 45 Ohio L. 23, contain an express declaration of legislative intention that no interest of the wife in either real or *personal estate, should be liable to be taken upon the contracts of the husband, during the life of the wife, or during the life or lives of her child or children ; .and further provision is made, enabling the wife by injunction to restrain her husband or others from wasting or squandering her *352 property. We think that a denial of the right of a married woman to sne for the protection of her own separate property, i’n which the husband has no interest, and when his brutality has driven her beyond the pale of his protection, would not only be at war with the spirit of our legislation for the protection of the rights of married women, but would tend very strongly to defeat, and in many cases would entirely defeat its object; and, instead of being in the-advance, in the extension and enlargement of our rules of practice, so as to adapt them to the actual wants and necessities of society, as it exists, we would be sadly behind our sister states, the decisions-of whose courts have been referred to. In the opinion of a majority of the court, there is no good reason to sustain this demurrer; the facts pleaded in the replication are sufficient to sustain the action, and the demurrer is therefore overruled, and the cause remanded to the district court for further proceedings.
Ranney, J., dissented.